[Civ. No. 21530.   Second Dist., Div. One.   Sept. 18, 1956.]

MAX P. SCHIFF et al., Respondents, v. C. D. PRUITT et al., Defendants; CITY HOMES, INC. (a Corporation), Defendant and Appellant.

Wolver & Wolver and Eugene L. Wolver for Defendant and Appellant.

Spiegel, Turner & Wolfson and Albert A. Spiegel for Respondents.

NOURSE (Paul), J. pro tem.*—By their amended and supplemental complaint in this action, respondents sought, through their first cause of action, to recover upon a promissory note in the sum of $20,000 executed by the defendant, and by a second cause of action to recover that amount upon a common count for money had and received.

The judgment of the lower court, from which defendant appeals, denied respondents recovery upon the promissory note sued upon in the first cause of action but granted respondents a judgment for the principal sum of $2,166.82 with interest thereon at the rate of 7 per cent per annum from May 11, 1955, together with interest at the rate of 7 per cent per annum on $20,000 from January 19, 1953, to May 11, 1955. It further allowed plaintiffs their costs. The judgment for costs was by way of amendment to the original judgment, and appellant has appealed separately from that judgment but in its brief has abandoned that appeal.

The respondents have filed a cross-appeal from that portion of the judgment which denied them a recovery upon the promissory note, but have advised this court in their briefs that if the judgment as rendered is affirmed, then they desire to abandon their cross-appeal.

But two points are made by appellant. The first is that the judgment is erroneous insofar as it awards plaintiffs interest, because, so they contend, the basic agreement under which the moneys were advanced by respondents to appellant was usurious. The second assignment of error is that a commission paid to the respondent Kosslyn should have been credited upon the judgment of $2,166.82 because it constituted a payment of usury.

The relevant facts are:

The plaintiffs and respondents are the general and limited partners in a limited partnership, known as the Duke Investment Company. The defendant C. D. Pruitt is the president and sole stockholder of appellant City Homes, Inc. On July 19, 1952, appellant entered into an agreement with one Philip B. Woodward and his wife, Elizabeth Woodward, to purchase from them certain real property in the city of Whittier at and for the price of $47,625, and at the same time entered into an agreement with one T. Earle Woodward and his wife to purchase a contiguous parcel of property for the price of $15,875. Of the purchase price of the first parcel, $13,000 was to be

---

*Assigned by Chairman of Judicial Council.

paid in cash at the time of the consummation of the sale, the balance to be evidenced by a promissory note secured by a first deed of trust. As to the second parcel, $4,500 was to be paid in cash, the balance to be evidenced by a promissory note secured by a first deed of trust.[1] Separate escrows were on July 29, 1952, simultaneously opened with the same escrow company, and appellant at that time paid into escrow $1,000, which was eventually credited one-half to each escrow. Appellant did not have the funds to pay into the escrow the balance of the down payments or its share of the costs of the escrow, and in early December, 1952, contacted Kosslyn and informed him of its desire to obtain money to complete the purchases, agreeing to pay him a commission if he could raise the money necessary so to do. It estimated the amount necessary at $25,000.

On December 22 the Woodwards gave notice in writing that unless the required amounts were deposited in escrow before the 31st of that month they would cancel the escrows. The escrow holder then notified appellant of the Woodwards' demands and that the further sum of $16,086.80 was necessary in order that appellant might fulfill its obligations under the escrow instructions. At that time Kosslyn had not completed the organization of the limited partnership, but was able to obtain from the prospective limited partners the sum of $5,000, and appellant or Pruitt raised the sum of $11,586.80, and these two sums were deposited in the escrows. Together with the $1,000 originally deposited they met the demands of the escrow holder.

On the 19th of January, 1953, the formation of the limited partnership having been completed, that entity and appellant entered into an agreement in writing whereby the partnership agreed to loan to appellant the sum of $20,000 and appellant agreed to deliver to the partnership its promissory note in the sum of $20,000 payable on or before December 15, 1953, with interest of $5.00. It was further agreed that that note was to be secured by a third deed of trust upon the real property which appellant was purchasing from the Woodwards, that deed of trust to be subordinate to a first deed of trust securing notes in an amount not to exceed $5,500 for each lot in the tract (the construction loan), and a purchase money

---

[1] These deeds of trust were to be subordinated to deeds of trust securing construction loans in sums not to exceed $6,500 as to each lot in the proposed subdivision.

second deed of trust securing notes not to exceed in the aggregate a sum equal to $500 for each lot in the tract. It further provided that the third deed of trust should contain a provision for the partial reconveyance of the lots in said tract upon the payment of $225 in cash for each lot reconveyed until such time as the entire principal of the note had been paid. The contract then sets forth an agreement which, though the language thereof is extremely ambiguous, we interpret as providing as follows: That in further consideration of the loan of $20,000 from the partnership to appellant, appellant would erect thirty houses on lots in the subdivision which it was contemplated would be created by appellant from the real property upon its acquisition from the Woodwards, and would transfer to the partnership the contracts of sale or purchase money deeds of trust received from the purchasers upon the partnership's assuming the indebtedness secured by the first deeds of trust (the construction loans), and *paying in cash to appellant the difference between the amount of the indebtedness assumed and the actual cost of each parcel of property sold.* That cost was defined as the aggregate of the purchase price of the real property, the cost of the development of the subdivision, title and legal fees, the finance charges upon the construction loan, and the actual direct costs of labor and materials used in the construction of the houses. It was further agreed that if the total *face value* of the contracts or deeds of trust received by respondent partnership exceeded $20,000, then respondent partnership should transfer to appellant sufficient thereof to reduce the face value of the contracts or deeds of trust held by said respondent to the sum of $20,000. The contract ends up with the statement that it is the purpose and intent of the contract that "at the conclusion of all transactions between the parties" the partnership would be repaid the sum of $20,000 in cash and be the owner of contracts of sale or second deeds of trust with a *face value* of $20,000 *in excess of the note or notes* secured by the first deeds of trust[2] (the construction loans).

After this contract was executed, appellant executed a note in favor of respondent partnership in the sum of $20,000, this note being dated the 19th day of January, 1953, and payable on the 19th of December, 1953. It provided for interest

[2] By agreement between Kosslyn and the limited partners, he had no interest in the indebtedness from appellant or in the contracts of sale or purchase money deeds of trust which were to be delivered to the partnership under the contract between the parties here adverted to.

of $5.00 for the first ten months and 11 days, and interest at 5 per cent per annum after that time, or a total interest for the full 11 months of $57.06, or approximately 0.31 per cent per annum. It further executed a deed of trust securing said promissory note which purported to convey to the trustee as security for said note ninety lots in the proposed subdivision. Immediately after the execution of the agreement between appellant and respondent partnership, the note and deed of trust were deposited with the same escrow holder with which the appellant's escrow with the Woodwards had been opened, and the respondent partnership deposited with that escrow holder the further sum of $15,000.

At this time appellant and respondents agreed that respondents might withdraw from the escrow, and they did withdraw from the escrow, the sum of $14,700.[3] From this money they paid to Kosslyn the sum of $1,000 as his commission for obtaining the loan of $20,000.

Thereafter the Woodwards gave notice of cancellation of the escrow, and suits were commenced by appellant against them. They did not make respondents parties to these suits. These suits were settled by compromise between appellant and the Woodwards, with the result that the escrow for the purchase of the property by appellant from the Woodwards was in effect cancelled.

Kosslyn, acting as trustee for the limited partnership, demanded of the escrow holder possession of appellant's note and the deed of trust deposited with the escrow holder, but appellant refused its consent to the delivery of these instruments and they were retained by the escrow holder, and this action was commenced. At the trial of the action the note sued upon and the deed of trust were received in evidence and delivered into the custody of the court. After the close of the trial but before the court had rendered its decision, the escrow holder, on May 11, 1955, pursuant to the stipulation of the parties, paid to the respondent partnership the sum of $17,833.18, this being the unexpended balance of the $20,000 deposited by respondent partnership with the escrow holder.

While no express finding was made as to delivery of appellant's note to the respondents, a finding that it was not delivered is implicit in the findings that were made; and appellant

---

[3]Pruitt and City Homes, Inc., were thus able to withdraw all money which it had deposited in the escrow, plus $2,113.20 of the moneys deposited by respondent partnership.

makes no point here of the fact, as found by the court, that the $20,000 was held in the escrow for the use and benefit of appellant.

Appellant's contention that the provisions of the contract which gave respondent partnership the right to purchase and retain contracts of purchase or deeds of trust having a face value of $20,000 over and above the amount of the construction loan constituted a contract for the payment of interest in excess of that permitted by the usury law, not only cannot be sustained but is wholly lacking in merit.

The contract contains no promise on the part of appellant to pay anything as interest for the use of the $20,000 loaned it other than the sum of $5.00. The contract only gives respondent partnership a right to purchase, at a price calculated by a formula set forth therein, the contracts of sale or purchase money deeds of trust received by appellant upon the sale of the first thirty houses erected in the tract. It does not guarantee the respondent partnership one cent of additional profit or interest, for there is no provision therein that the contracts of sale or purchase money deeds of trust received from the respective purchasers of the houses and lots would exceed the amount of the first deeds of trust by an amount equal to or in excess of the amount paid in cash by respondents therefor. Unless the face value of these contracts of sale or purchase money deeds of trust did equal the cash payment made by respondent partnership therefor, it would have a loss rather than a profit; and in any event its profit could only be an amount equal to the difference between the cash outlay made by it and the sum of $20,000. Whether there would be a loss or a profit or, if a profit, what its amount would be, were all matters of speculation and could afford no possible basis for a finding of usury.

It is further self-evident that plaintiffs' right to any possible profit arose not solely out of the agreement to loan $20,000, but out of their agreement to assume appellant's liability upon the construction loans and to pay in cash such further amounts as would make appellant whole insofar as the lots covered by the contract or trust deeds assigned to the partnership were concerned.

Assuming that the contract did provide for a profit to respondent partnership in consideration of the loan of the $20,000, it is clear that the right to that profit was contingent and one wholly at hazard, for the entire risk of the venture,

insofar as the thirty houses were concerned, by the terms of the contract became respondents'.

"It is also a general principle that when payment of full legal interest is subject to a contingency so that the lender's profit is wholly or partially put in hazard the interest so contingently payable need not be limited to the legal rate, providing the parties are contracting in good faith and without the intent to avoid the statute against usury." (*Miley Petroleum Corp., Ltd.* v. *Amerada Petroleum Corp.,* 18 Cal. App.2d 183, 189 [63 P.2d 1220]; *Lamb* v. *Herndon,* 97 Cal. App. 193, 201 [275 P. 503]; *Jameson* v. *Warren,* 91 Cal.App. 590, 595 [267 P. 372]; 11 Cal.Jur. 10-Yr. Supp. [1950 rev.] p. 171.) We need not further apply this principle here, as its application is clear.[4]

If we should assume, as appellant has, that the right to purchase the contracts of sale or purchase money deeds of trust which was granted respondent partnership by the contract was given in the payment of interest for the use of the $20,000, still there was no evidence whatsoever what the value of this right was at the time the contract was entered into, and without some evidence as to that value it could not be held that the giving of it constituted a payment of interest in excess of the lawful rate (*Martyn* v. *Leslie,* 137 Cal.App.2d 41, 55 [290 P.2d 58]).

Appellant's contention that the commission of $1,000 paid to Kosslyn was exacted from appellant by respondent partnership has no foundation in the evidence, and is devoid of merit. At the time appellant employed Kosslyn to procure financing for it, the respondent partnership was not even in existence. Kosslyn acted not as the agent of the respondent partnership but solely as the agent of appellant and, so acting, solicited the respondents who became limited partners to advance the moneys which were eventually loaned by the partnership to appellant. Appellant, in its brief, has made no reference to any evidence which would support its contention.

It is further appellant's contention that the payment of $1,000 to Kosslyn constituted a return to respondent partnership of a portion of the moneys advanced by it, and that therefore the court erred in holding that that amount was money had and received by appellant. There is no basis for this con-

---

[4] In what we have said we have assumed, but do not decide, that if the contract had provided for usury, that provision would have precluded the interest awarded by the court even though the contract was abandoned and its performance prevented by appellant.

tention. The thousand dollars was paid by appellant to Kosslyn in discharge of appellant's obligation to Kosslyn. This payment was retained by Kosslyn, and there is not an iota of evidence that the respondent partnership received any part of it.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.