PER CURIAM:
 

 Beausejour Corporation, N.V. (“Beausej-our”) appeals the order of the district court affirming the judgment of the bankruptcy court, 37 B.R. 96, that the transaction between Beausejour and Offshore Development Corp. (“Offshore”) was a usurious loan and, therefore, that the debt owed by Offshore was unenforceable. Beausejour contends that the lower courts erred in holding: (1) that the transaction between Beausejour and Offshore was a loan viola-tive of Florida’s usury laws; (2) that, if the loan was violative of Florida’s usury statutes, the civil penalty for criminal usury imposed by Fla.Stat. § 687.071(7) could not have been avoided by a timely cure notice pursuant to Fla.Stat. § 687.04(2); and (3) that, assuming the civil penalty for criminal usury could be avoided by a timely cure notice, Beausejour’s “cure notice” did not comply with the requirements of the Florida law. Since we find that the lower courts were not clearly erroneous in finding that the transaction was violative of Florida’s usury statutes, and since the lower courts correctly ruled that the cure notice did not comply with the requirements of Fla.Stat. § 687.04(2), we affirm the order of the district court. In light of our disposition of the third issue, we need not decide whether the penalty imposed by Fla. Stat. § 687.071(7) can be avoided by a timely cure notice.
 

 I.
 

 Whether or not a transaction is subject to the usury laws of Florida is a question of fact.
 
 Burket v. Johnson,
 
 61 So.2d 197, 198 (Fla.1952);
 
 Brown v. Banning,
 
 71 Fla. 208, 71 So. 327, 328 (1916);
 
 Schwartz v. Lincoln Construction & Development Corp.,
 
 455 So.2d 612, 612 (Fla. 3d D.C.A. 1984);
 
 Kellerman v. Siegel,
 
 319 So.2d 581, 581 (Fla. 3d D.C.A. 1975) (“[T]he issue of usury is ordinarily one of fact to be determined at a trial.”);
 
 Dupont Plaza, Inc. v. Samuel Kipnis Family Foundation,
 
 132 So.2d 352, 357 (Fla. 3d D.C.A. 1961) (“[Wjhere, as here, the chancellor’s finding [of usury] is based upon conflicting evidence, an appellate court is not warranted in disturbing his conclusion unless it is clearly erroneous.”) (citations omitted); Under the Federal Rules of Civil Procedure, the district court’s “[findings of fact shall not be set aside unless clearly erroneous.” Fed.R.Civ.P. 52(a).
 

 Offshore contends that the lower courts erred in finding that this transaction, which had been structured as a sale, was in fact a loan. The Florida courts have held that “the substance of a transaction rather than the form will be examined to determine whether a transaction not cast in the form of a loan nevertheless constitutes a usurious loan transaction.”
 
 Growth Leasing, Ltd. v. Gulfview Advertiser, Inc.,
 
 448 So.2d 1224, 1225 (Fla. 2d D.C.A. 1984).
 
 See also Griffin v. Kelly,
 
 92 So.2d 515, 518 (Fla.1957) (“ ‘Where the intent of a party to a bargain is to make a loan of money for an extension of the maturity of a pecuniary debt for a greater profit than is allowed by law, the agreement is illegal though the transaction is put in whole or in part in the form of a sale, a contract to sell or other contract.’ ”) (citation omitted). Thus, Florida law clearly establishes that a court should look beyond the form of the transaction in determining whether there has been a usurious loan.
 

 As with the general question of usury, this sub-issue is also a question of fact, and the district court’s finding will not be set aside unless it is clearly erroneous.
 
 See
 
 
 *1321
 

 Burket v. Johnson,
 
 61 So.2d at 198 (“The Court below made a finding of fact that the transaction was a loan as between the parties .... There is sufficient evidence to sustain the Chancellor in his findings. We hold that this suit is well within the frequently reiterated rule that the findings of the Chancellor on facts will not be disturbed by an appellate Court unless such facts are clearly shown to be erroneous.”) (citations omitted);
 
 Schwartz v. Lincoln Construction & Development Corp.,
 
 455 So.2d at 612 (“The trial judge’s extensive findings which concluded that a contract for the purchase of several condominium units was a disguised usurious mortgage loan will not be disturbed by this court because they are supported by clear and convincing evidence in the record.”) (citations omitted).
 

 In the instant case, the district court found that “[i]t is obvious from the facts adduced at trial that the transactions were really designed by Beausejour to loan Offshore $500,000 to enable Offshore to buy the Duhme Road property. In exchange for the loan, Offshore gave Beausejour a mortgage note in the amount of $1 million.” Bankruptcy Court Opinion at 101.
 

 There is more than ample evidence in the record to establish that Beausejour was not merely a seller of real estate but instead was a financer of Offshore’s purchase and development of the real estate in question. For example, the testimony of the managing director of Beausejour, Mr. Brasseur, establishes that Beausejour’s only interest was putting a certain amount of money into the transaction in exchange for return of twice that amount of money.
 
 See, e.g.,
 
 Bankruptcy Transcript at pp. 41, 44 and 45. In addition, elsewhere Mr. Brasseur indicated that the transaction was a “way for [Offshore] to get the land without putting any cash for it.”
 
 Id.
 
 at 53.
 

 Alternatively, Offshore contends that the money invested was “risk capital” rather than a loan and that Florida precedent establishes that a rate of return in excess of the usury limits is permissible where the “lender’s” money is at risk. Offshore cites
 
 Griffin v. Kelly,
 
 92 So.2d 515 (Fla.1957) and
 
 Diversified Enterprises, Inc. v. West,
 
 141 So.2d 27 (Fla. 2d D.C.A.1962), for this proposition.
 

 In
 
 Griffin v. Kelly,
 
 the Florida Supreme Court ruled that certain monies had
 
 not
 
 been invested as “risk capital.” 92 So.2d at 518. Thus, in dictum the court suggested that risk capital would not be subject to the usury laws. However, the case provides no guide as to what should be considered risk capital.
 

 In
 
 Diversified Enterprises, Inc. v. West,
 
 the Florida court stated that a “risk, however, must be substantial, for a mere color-able hazard will not preclude excessive interest charges from being usurious.” 141 So.2d at 30 (citations omitted). The Florida court cited four cases “that consider contingent repayment or risk of capital.”
 
 Id.
 
 In the first of these cases,
 
 Britz v. Kinsvater,
 
 351 P.2d 986 (Ariz.1960), the Supreme Court of Arizona stated that “a loan is ‘contingently’ repayable only if the lender has — by the terms of the loan — subjected himself to some greater hazard than that the borrower will fail to repay the loan or that the security will depreciate in value.”
 
 Id.
 
 at 990 (citations omitted). “An example of a debt ‘contingently repayable’ is posed by this situation: Borrower says to lender: Lend me $10 to bet on a horse race, and if the horse wins, I promise to pay you $15 tomorrow; if the horse loses, you get nothing.”
 
 Id.
 
 at 991. The Supreme Court of Arizona concluded that “where the lender risks the principal with the chance of either getting a greater return than the lawful interest rate or possibly getting nothing (if the continued event fails to occur), there is no usury.”
 
 Id.
 
 “Thus, as a general rule, it would appear that an ordinary secured loan with interest at a definite rate would always be ‘absolutely repayable’ in terms of this rule, since the lender would never, in such case, face any greater hazard than that the borrower might default or that the security might depreciate.”
 
 Id.
 

 In another one of the cases cited by the Florida court,
 
 Schiff v. Pruitt,
 
 144 Cal. App.2d 493, 301 P.2d 446 (2d Dist.1956), the
 
 *1322
 
 court found that a transaction did not violate the usury law because “the right to [a] profit was contingent and one wholly at hazard, for the entire risk of the venture, ... became [the lender’s].”
 
 Id.
 
 301 P.2d at 449-50.
 

 Similarly, in another one of the cases cited by the Florida court,
 
 Dublin v. Veal,
 
 341 S.W.2d 776 (Ky.1960), the court adopted the rule that:
 

 ‘Where, under a contract for the payment or repayment of money, the payment of interest on the principal sum is subject to a contingency, so that the creditor’s entire profit or return is put in hazard, the interest so contingently payable need not be limited to the maximum affixed by the usury statutes, provided the contract is made in good faith and without intention to evade or avoid the usury laws.’
 

 Id.
 
 at 777-78 (citation omitted).
 

 Thus, Florida precedent and the case law on which the Florida precedent was based establishes that there must be a substantial risk, i.e., a chance of losing one’s whole investment, in order for a financing transaction to be exempted from the usury statute. In light of this precedent, the district court and the bankruptcy court correctly found that Beausejour’s loan was not “risk capital.” Offshore’s investment was evidenced by a $1 million dollar note and secured by a first mortgage on the property. In fact, the original owners of the land held a mortgage subordinate to Beausej-our’s mortgage. Bankruptcy Transcript at 109. The district court and the bankruptcy court therefore were not clearly erroneous in finding that Beausejour’s loan was not so hazardous as to constitute “risk capital.”
 

 In summary, we hold that the district court’s finding that the transaction between Offshore and Beausejour was a usurious loan is not clearly erroneous. Therefore, the judgment of the lower courts on this point is affirmed.
 

 II.
 

 Beausejour asserts that the district court erred in affirming the bankruptcy court’s decision that the civil penalty for criminal usury imposed by Fla.Stat.Ann. § 687.071(7) (West Supp.1986)
 
 [1]
 
 cannot be avoided by compliance with the cure provisions of Fla.Stat.Ann. § 687.04(2) (West Supp.1986).
 
 [2]
 
 We need not decide this question because, assuming
 
 arguendo
 
 that the cure provisions apply to criminally usurious loans, Beausejour did not comply with the requirements of § 687.04(2).
 

 The statutory cure provision clearly requires that the lender do three things: (1) notify the borrower of the usurious overcharge; (2) refund the amount of any overcharge plus interest on the overcharge; and (3) make whatever adjustments in the contract or account which are necessary to ensure that the borrower will not be required to pay further interest at usurious rates. Fla.Stat.Ann. § 687.04(2).
 

 Beausejour asserts that it complied with the cure provisions by its letter to Offshore of September 15, 1982. That letter stated in relevant part:
 

 Please be advised that Beausejour will accept, in full satisfaction of the obligations of Offshore to Beausejour under the Note and Mortgage, a sum equal to all amounts advanced or paid by Beausej-our to, or at the direction of, Sunland, Sedwick, Connell, Offshore or any entity
 
 *1323
 
 or individual controlled by or affiliated with Offshore or its principals, together with interest on all such advances or payments from the date of such advances or payments to the date of repayment at the rate of
 
 18%
 
 per annum, less any prior credits, adjustments or repayments.
 

 Except as modified above, the Note and Mortgage shall remain in full force and effect.
 

 Bankruptcy Record, Exh. H to Offshore’s counterclaim.
 

 The bankruptcy judge found that the first requirement of the statute had not been satisfied because the letter did not state that there had been a usurious overcharge. In addition, the bankruptcy court found that the second statutory requirement had not been met because there had been no refund of any portion of the sum of $250,000 Offshore paid to Beausejour on December 28, 1981. Finally, the bankruptcy judge found that the third requirement had not been satisfied because no formal adjustments had ever been made to the appropriate contracts to insure that Offshore would not be required to pay any further interest above the statutory maximum.
 

 It is clear that Beausejour’s letter did not notify Offshore of the usurious overcharge. There is no mention of it in the letter. Thus, Beausejour did not comply with the first requirement of the curative law. We need not review the bankruptcy court’s findings that the second and third elements were not satisfied because the statute requires compliance with all three elements.
 

 In summary, the “cure notice” did not satisfy the statutory requirements. We affirm the judgment of the lower courts on this issue. We do not need to consider whether a complete cure notice would have allowed Beausejour to avoid the civil penalty imposed by § 687.071(7).
 

 III.
 

 For the reasons stated above, the order of the district court is
 

 AFFIRMED.
 

 [1]
 

 . The section provides:
 

 No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state.
 

 Fla.Stat.Ann. § 687.071(7) (West Supp.1986).
 

 [2]
 

 . The section provides:
 

 If, prior to the institution of an action by the borrower or the filing of a defense under this chapter by the borrower or receipt of written notice by the lender from the borrower that usury has been charged or collected, the lender notifies the borrower of the usurious overcharge and refunds the amount of any overcharge taken, plus interest on the overcharge taken at the maximum lawful rate in effect at the time the usurious interest was taken, to the borrower and makes whatever adjustments in the appropriate contract or account as are necessary to ensure that the buyer will not be required to pay further interest in excess of the amount permitted by s. 687.03.
 

 Fla.Stat.Ann. § 687.04(2) (West Supp.1986).