**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SANFORD J. WISHNEV, individually and on behalf of all others similarly situated, *Plaintiff-Appellee,*<br><br>v.<br><br>THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, *Defendant-Appellant.* | No. 16-16037<br><br>D.C. No. 3:15-cv-03797-EMC<br><br>ORDER CERTIFYING QUESTION TO THE CALIFORNIA SUPREME COURT |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted October 16, 2017
San Francisco, California

Filed January 18, 2018

Before: Sandra S. Ikuta and Andrew D. Hurwitz, Circuit
Judges, and Donald W. Molloy,[*] District Judge.

Order

---

[*] The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

## SUMMARY[**]

### Certified Question to California Supreme Court

The panel certified the following questions of state law to the California Supreme Court:

> 1.  Are the lenders identified in Article XV of the California Constitution, *see* Cal. Const. art. XV, § 1, as being exempt from the restrictions otherwise imposed by that article, nevertheless subject to the requirement in section 1916-2 of the California Civil Code that a lender may not compound interest "unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith"?

> 2. Does an agreement meet the requirement of section 1916-2 if it is comprised of: (1) an application for insurance signed by the borrower, and (2) a policy of insurance containing an agreement for compound interest that is subsequently attached to the application, thus constituting the entire contract between the parties pursuant to section 10113 of the California Insurance Code?

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Timothy J. O'Driscoll (argued) and Stephen C. Baker, Drinker Biddle & Reath LLP, Philadelphia, Pennsylvania; Marshall L. Baker, Matthew J. Adler, Alan J. Lazarus, and Michael J. Stortz, Drinker Biddle & Reath LLP, San Francisco, California; for Defendant-Appellant.

Robert Bramson (argued) and Jennifer S. Rosenberg, Bramson Plutzik Mahler & Birkhaeuser LLP, Walnut Creek, California, for Plaintiff-Appellee.

Thomas A. Evans, Reed Smith LLP, San Francisco, California; Lisa Tate, Vice President, Litigation & Associate General Counsel, American Council of Life Insurers, Washington, D.C.; for Amicus Curiae American Council of Life Insurers.

Laura L. Geist and Andrew S. Azarmi, Dentons US LLP, San Francisco, California; Brad Wenger, Association of California Life and Health Insurance Companies, Sacramento, California; for Amicus Curiae Association of California Life and Health Insurance Companies.

**ORDER**

We ask the California Supreme Court to resolve two open questions of state law that have significant effects on insurance companies and insureds in California.

An initiative measure enacted in 1918 (the Initiative), Cal Civ. Code §§ 1916-1–5, limits the amount of interest lenders may charge, and provides that lenders may not compound

interest "unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith" (hereafter, the "disclosure requirement"). Cal. Civ. Code § 1916-2. An amendment to the California constitution exempts certain lenders from some aspects of the Initiative. Cal. Const. art. XV, § 1. The state legislature has included insurance companies as an exempt lender. Cal. Ins. Code § 1100.1. It is not clear, however, whether the constitutional provision exempts lenders from the disclosure requirement, and courts considering this issue have reached different results.

Nor is it clear whether a lender that is an insurance company can satisfy the disclosure requirement of section 1916-2 by obtaining the borrower's signature on an application for insurance, and then subsequently providing an insurance policy that includes a compound interest provision, even though the state legislature has provided that an insurance application and policy form a single contract. Cal. Ins. Code § 10113.

By addressing these open issues, the California Supreme Court will resolve the appeal before us. Sanford Wishnev, an insured who borrowed money from Northwestern Mutual Life Insurance Company and was assessed compound interest, is suing the insurance company on behalf of a putative class for a violation of the disclosure requirement in section 1916-2. Northwestern Mutual claims that it is exempt from complying with the disclosure requirement, and also claims that the application signed by Wishnev, which is attached to the insurance policy, satisfies the disclosure requirement. If Northwestern Mutual is correct on either of its claims, it is not liable to Wishnev or other members of the putative class for violating section 1916-2. If Northwestern

Mutual is subject to section 1916-2's disclosure requirement, and did not fulfill its obligation under California law, then Northwestern Mutual is potentially liable to Wishnev and any class members who have been charged compound interest without the required disclosure.

Accordingly, we certify the following two questions to the California Supreme Court:

> 1. Are the lenders identified in Article XV of the California Constitution, *see* Cal. Const. art. XV, § 1, as being exempt from the restrictions otherwise imposed by that article, nevertheless subject to the requirement in section 1916-2 of the California Civil Code that a lender may not compound interest "unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith"?

> 2. Does an agreement meet the requirement of section 1916-2 if it is comprised of: (1) an application for insurance signed by the borrower, and (2) a policy of insurance containing an agreement for compound interest that is subsequently attached to the application, thus constituting the entire contract between the parties pursuant to section 10113 of the California Insurance Code?

Our phrasing of the questions should not restrict the Court's consideration of the issues involved. The Court may rephrase the questions as it sees fit in order to address the contentions

of the parties.  If the Court agrees to decide these questions, we agree to accept its decision.  We recognize that the Court has a substantial caseload, and we submit these questions only because of their significance to the administration of insurance policy loans in the state of California, illustrated by the numerous cases involving these questions of state law.

I

The ambiguities before us today are a product of the development of California usury law.  In 1918, the California voters approved the  Initiative, which prevents lenders from charging usurious interest rates. *See* Cal. Civ. Code §§ 1916-1–5.[1]  Section 1916-1 established that the interest rates for loans in California could not exceed 12 percent per year. *Id.* § 1916-1.   Section 1916-2 prohibited lenders from compounding interest "unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith."  *Id.* § 1916-2.  Finally, the Initiative provided that every person "who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections" may sue to recover "treble the amount of the money so paid or value delivered in violation of said sections, providing such action shall be brought within one year after such payment or delivery." *Id.* § 1916-3(a).

In 1934, the voters amended the California Constitution "to abolish the inflexible, inadequate and unworkable provisions of the usury law and to reestablish in the Legislature the power to enact laws affecting the business of

---

[1] The full text of the 1918 Initiative appears in Appendix A.

lending money in this state." *Carter v. Seaboard Fin. Co.*, 33 Cal. 2d 564, 579 (1949).[2] The amendment, now Article XV,[3] lowered the maximum interest rate that could be charged by covered lenders. Cal. Const. art. XV, § 1. Paragraph 1 of Article XV set a 10 percent maximum interest rate on loans for "personal, family or household purposes." *Id.* Paragraph 2 of Article XV set a different interest rate for loans that were not for personal use, such as for the "purchase, construction or improvement of real property." *Id.* In addition, paragraph 2 stated that "[n]o person . . . shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action." *Id.*

Paragraph 2 of Article XV also gave the state legislature the desired flexibility to set interest rates for particular lenders. First, it exempted certain lenders from its prohibitions by providing that "none of the above restrictions shall apply to any obligations of, loans made by, or forbearances of, [list of exempt lenders] or any other class of persons authorized by statute." *Id.* Second, it gave the state legislature authority over these exempt lenders, by providing that:

> The Legislature may from time to time prescribe the maximum rate per annum of, or

---

[2] The full text of Cal. Const. art. XV, § 1 appears in Appendix B.

[3] Article XV was adopted in 1976 to replace a prior amendment, Article XX, section 22, which had nearly identical language. In 1979, Article XV was amended to give the state legislature power to expand the class of exempt lenders by statute.

> provide for the supervision, or the filing of a
> schedule of, or in any manner fix, regulate or
> limit, the fees, bonuses, commissions,
> discounts or other compensation which all or
> any of the said exempted classes of persons
> may charge or receive from a borrower in
> connection with any loan or forbearance of
> any money, goods or things in action.

*Id.* The term "or other compensation" is not defined in the amendment. The amendment concludes that "[t]he provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith." *Id.*

In 1981, the state legislature enacted section 1100.1 of the California Insurance Code, which provides that "the restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any obligation of, loans made by, or forbearances of, any incorporated admitted insurer."

After the enactment of Article XV, the California Supreme Court decided several cases that addressed, either directly or indirectly, the extent to which the interest rate limitations in the Initiative and Article XV applied to exempt lenders. In *Penziner v. Western American Finance Co.*, a non-exempt lender claimed that after Article XV was adopted, the Initiative became a dead letter. 10 Cal. 2d 160, 174. (1937). The California Supreme Court disagreed. It explained that a constitutional amendment repeals or supersedes "only those portions of prior acts repugnant to the later act." *Id.* at 174–75 (approving the rule that a constitutional amendment "operates as an express limitation

upon the extent to which it is intended that former acts shall cease to be operative, namely, only so far as they are actually inconsistent with the new act"). Accordingly, the portions of the Initiative that "are not repugnant to and inconsistent with the new act are to remain in force." *Id.* at 175 (citation omitted).

*Penziner* then differentiated between exempt and non-exempt lenders. According to *Penziner*, "the power granted to the legislature by the constitutional amendment is expressly limited in its scope to the regulation and control of the charges of the exempted classes of lenders." *Id.* at 177. Specifically, the legislature has "control of the charges to be made by the exempted groups," and that authority is inconsistent with the Initiative.[4]  *Id.*  But "[a]s to the nonexempt classes of lenders, the legislature possesses no such power." *Id.*  Accordingly, "at least as to the non exempt classes of lenders," the Initiative "was not repealed by the adoption of the constitutional provision, and plaintiff's cause of action was not affected thereby." *Id.* at 178. *Penziner*, however, did not address the Initiative's disclosure requirement.

After *Penziner* indicated that under Article XV only the legislature had authority to impose interest rate limitations on exempt lenders, the California Supreme Court confirmed the broad scope of this exemption. *See Carter*, 33 Cal. 2d at 582.

---

[4] Indeed, on the same day *Penziner* was decided, the California Supreme Court also held that personal property brokers, an exempt class, are not subject to the Initiative's maximum interest rate provision. *Wolf v. Pac. Sw. Disc. Corp.*, 10 Cal. 2d 183, 184 (1937) ("The third paragraph of said section of the Constitution designated certain organizations and individuals which are exempt from the general provisions of the usury law.").

*Carter* raised the question whether a personal property broker who sold a truck secured by a security interest in the truck was subject to the maximum interest rate established by Article XV. *Id.* at 568, 578. The plaintiff first noted that paragraph 1 of Article XV set a 10 percent maximum interest rate for loans involving personal, family or household purposes, while paragraph 2 set different interest rates for loans that were not for personal use. *Id.* at 578–79. The crucial language exempting certain lenders (i.e., stating that "none of the above restrictions shall apply" to the exempt lenders listed in Article XV or "any other class of persons authorized by statute") appears in paragraph 2. Cal. Const. art. XV, § 1. Accordingly, the plaintiff argued that paragraph 1 applied to all lenders, exempt and non-exempt, while paragraph 2 applied only to non-exempt lenders. *Carter*, 33 Cal. 2d at 579. Under this theory, even though a personal property broker was among the class of exempt lenders, it was still subject to the interest rate limits imposed by paragraph 1.

*Carter* rejected this argument. After reviewing the history of usury legislation in California, the Court concluded that the language of paragraph 2 (i.e., that "none of the above restrictions shall apply") encompassed all the restrictions in Article XV, and therefore an exempt lender is exempt from all provisions in Article XV. *Id.* at 580. Moreover, the language authorizing the legislature to "in any manner fix, regulate or limit, the fees, bonuses, commissions, discounts or other compensation," Cal. Const. art. XV, § 1, put such regulations "entirely within the control of the Legislature." *Carter*, 33 Cal. 2d at 583. If the legislature does not act, an exempt lender "is subject to no restriction on interest rates or charges." *Id.* at 582. Because a personal property broker was an exempt lender (and not subject to the rates set forth in

Article XV), and because the legislature had not enacted applicable legislation affecting the interest and charges of personal property brokers, *Carter* rejected the plaintiff's claim that the charges were usurious. *Id.* at 585–86.

The California Supreme Court has repeatedly confirmed that an exempt lender under Article XV is subject only to interest rate limitations imposed by the legislature. *W. Pico Furniture Co. v. Pac. Fin. Loans*, 2 Cal. 3d 594, 614 (1970) ("As to these exempt classes, there are no restrictions on the rates of interest charged unless the Legislature so provides."); *Wolf v. Pac. Sw. Disc. Corp.*, 10 Cal. 2d 183, 184 (1937) (holding that "the legislature was given power to prescribe the maximum rate of interest" on loans by exempt lenders). Exempt lenders are not even subject to common law limits on rates, because "[a]ny other result would frustrate the constitutional amendment which was designed to place in the hands of the Legislature the control of the charges to be made by the exempted groups." *W. Pico Furniture*, 2 Cal. 3d at 615.

Although the California Supreme Court has directly held that the legislature has plenary authority over the interest rates charged by exempt lenders, it has suggested in dicta that the legislature also has plenary authority over other aspects of exempt lenders' operations. *See Heald v. Friis-Hansen*, 52 Cal. 2d 834, 838 (1959) ("[B]y exempting from its restrictions certain enumerated classes of persons . . . [Article XV] operates to exempt those classes from the restrictions in the Usury Law."); *Ex parte Fuller*, 15 Cal. 2d 425, 434 (1940) ("As to the exempted groups, the legislature was reinvested with the same control over them as it had prior to the enactment of the Usury Law."). Accordingly, it is an open question whether the Initiative's disclosure requirement

for compound interest, which regulates the procedures a lender must take before imposing a compound interest charge, is superseded by the legislature's power over exempt lenders.**[5]**

## II

This is an appropriate case in which to seek the California Supreme Court's guidance on this issue because it squarely raises the question whether exempt lenders are subject to the Initiative's prohibition against charging compound interest "unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith." Cal. Civ. Code § 1916-2. We now turn to the facts and arguments.

The following allegations are derived from Wishnev's First Amended Complaint and the four life insurance policies issued to Wishnev. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (holding that on a motion to dismiss, a court can consider documents that are not physically attached to the complaint, so long as "the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." (alteration in original) (citation omitted)).

---

**[5]** A depublished California Court of Appeal decision addressed this question, concluding that the legislature's authority "to regulate 'in any manner' the interest charged by exempt lenders" includes the regulation of compound interest, and this authority supersedes any regulation of compound interest, including the disclosure requirement. *Thomason v. Bateman Eichler, Hill Richards, Inc.*, 245 Cal. Rptr. 319, 322 (Ct. App. 1988) (depublished opinion).

Northwestern Mutual is a Wisconsin corporation admitted in California.[6] Northwestern Mutual issued Wishnev four life insurance policies between 1967 and 1976. These policies are "permanent" life insurance policies, which pay a benefit on the death of the insured and also accumulate a cash value during the insured's lifetime. Northwestern Mutual's policyholders may take out loans secured by a permanent life insurance policy's cash value. Northwestern Mutual generally pays annual dividends to its policyholders, but when a policyholder borrows funds using the policy's cash value as collateral, Northwestern Mutual applies the annual dividend to reduce the amount of the loan balance, including accrued interest.

Wishnev completed, submitted, and signed an application for each policy. None of these applications authorized Northwestern Mutual to charge compound interest, but each application asks: "Shall the PREMIUM LOAN provision, if available, become operative according to its terms?" Wishnev checked the box marked "Yes" on each application.

After Wishnev signed each application, Northwestern Mutual sent him the insurance policy. Paragraph 1 of "General Provisions" in each policy states: "This policy and the application, a copy of which is attached when issued, constitute the entire contract." Paragraph 4 of "Loan Provisions" states: "Unpaid interest shall be added to and become part of the loan and shall bear interest on the same terms."

---

[6] Under California Insurance Code section 24, the word "admitted" means "entitled to transact insurance business" in California.

Sometime after 1980, Wishnev took out four policy loans, secured by the cash value and death benefit value of each policy. Northwestern Mutual assessed compound interest on the loan balances. In addition, Northwestern Mutual reduced the amount of dividends paid to Wishnev due to the compound interest that had accrued.

Wishnev brought a class action lawsuit in state court on behalf of himself and "all others similarly situated" arising from Northwestern Mutual's "pattern and practice of charging compound interest on life insure policy and premium loans without a written agreement signed by the borrower providing for such compounding." Wishnev claimed that Northwestern Mutual violated section 1916-2 of the California Civil Code by failing to obtain a clearly expressed writing signed by the borrower before charging compound interest.[7] The complaint seeks repayment of dividends withheld from Wishnev and the putative class and treble damages under section 1916-3.

Northwestern Mutual removed the state court action to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). In a motion to dismiss, Northwestern Mutual argued that, as an insurance company, it is an exempt lender under section 1100.1 of the California Insurance Code, and therefore exempt from the Initiative's disclosure requirement. Second, Northwestern Mutual argued that it complied with the disclosure requirement because the "contract," comprised of the insurance application and

---

[7] Wishnev also asserted claims for declaratory relief, violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, money had and received, and unjust enrichment.

insurance policy, Cal. Ins. Code § 10113, provides for assessment of compound interest.**[8]**

The district court denied Northwestern Mutual's motion. The district court held that because Article XV did not address disclosure of compound interest, the Initiative's disclosure requirement was not repugnant to the California Constitution and therefore remained in effect. The court also reasoned that the legislature's authority to regulate "fees, bonuses, commissions, discounts, or other compensation" of exempt lenders did not supersede the Initiative's disclosure requirement, because "other compensation" included only "such things as loan fees and points, not compound interest." The court then certified its order for interlocutory appeal.

### III

On appeal, Northwestern Mutual first raises the question whether lenders that are exempt from the interest rate requirements of Article XV (providing that "none of the above restrictions shall apply to any obligations of, loans made by, or forbearances of" specified exempt lenders) and

---

**[8]** Northwestern Mutual also argued that Wishnev did not make any interest payments, and so lacked standing to sue. We reject this argument. A borrower that has paid interest assessed in violation of the Initiative may maintain a suit for treble the amount of "money so paid or value delivered." Cal. Civ. Code § 1916-3. Wishnev effectively made interest payments when Northwestern Mutual applied the annual dividend to reduce the amount of his loan balance, including accrued interest. *See Black's Law Dictionary* 1243 (9th ed. 2009) (defining "payment" as "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."); *see also Corwin v. Ward*, 35 Cal. 195, 196, 198 (1868) (holding that offsetting two loans discharges a party's obligation, even when money doesn't change hands.).

subject to the plenary authority of the legislature as to interest rates and "other compensation" are also exempt from the disclosure requirement of section 1916-2.

There is no dispute that Northwestern Mutual is an exempt lender for purposes of Article XV. *See* Cal. Ins. Code § 1100.1. Northwestern Mutual argues that Article XV, as interpreted by the California Supreme Court, supersedes the disclosure requirement for two main reasons. First, Northwestern Mutual asserts that the legislature's plenary authority over insurers exempts them from all of the Initiative's requirements. According to Northwestern Mutual, this interpretation is consistent with *Carter*, which noted that the regulation of exempt lenders "is entirely within the control of the Legislature," 33 Cal. 2d at 583, and that an exempt lender "is subject to no restriction on interest rates or charges" until the legislature exercises its power under the amendment, *id.* at 582. Northwestern Mutual argues that this broad reading is consistent with "the objective" of Article XV, "to reestablish in the Legislature the power to enact laws affecting the business of lending money in [California]." *Id.* at 579.

Second, Northwestern Mutual argues that even if exempt lenders are subject to some provisions in the Initiative, they are not subject to the disclosure requirement because it is in direct conflict with Article XV. This argument proceeds through several steps. According to Northwestern Mutual, the regulation of compound interest falls squarely within the legislature's exclusive power over exempt lenders because Article XV provides that the legislature may "in any manner fix, regulate or limit the fees, bonuses, commissions, discounts or other compensation" that the exempted class may "charge or receive" on a loan. Cal. Const. art. XV, § 1.

Northwestern Mutual asserts that when lenders compound interest, they directly "charge" a borrower on the loan by increasing the loan payments at each interval. Moreover, the phrase "other compensation" is broad enough to cover compound interest. Indeed, Northwestern Mutual asserts, compound interest can be a form of interest. For instance, the California Supreme Court has held that compound interest is included in the interest rate calculation when looking at the total interest charged by a lender. *See Heald*, 52 Cal. 2d at 840 (citing numerous cases for the proposition that compounding at intervals of less than one year can make a transaction "usurious" when the effective interest rate exceeds the maximum interest rate). Thus, the legislature's power to regulate compound interest is also derived from the power to "prescribe the maximum rate per annum" that the exempted lenders "may charge or receive" on a loan. Cal. Const. art. XV, § 1.

Northwestern Mutual next argues that the legislature's power to regulate compound interest encompasses the procedures for charging compound interest, including any disclosure requirement. If exempt lenders were subject to a procedural disclosure requirement, Northwestern Mutual argues, the purpose of giving the legislature flexibility to regulate different categories of lenders would be hampered or defeated. Because the authority granted to the legislature under Article XV includes the regulation of compound interest, which encompasses the manner in which it is charged, Northwestern Mutual concludes that Article XV directly conflicts with, and therefore supersedes, the Initiative's disclosure requirement.

In response, Wishnev argues that *Penziner* makes it clear that Article XV does not supersede the Initiative unless the

two are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation."  10 Cal. 2d at 176.  Because Article XV does not directly address the Initiative's disclosure requirement, Wishnev argues the disclosure requirement is not irreconcilable or repugnant to the operation of Article XV.  Wishnev also argues that compound interest is not "other compensation" a lender may receive or charge on a loan; rather, he contends, that term refers to "charges (and discounts), not methods of calculating interest" and is "best understood to refer to loan points and similar loan-related charges."

Second, Wishnev argues that, even if the legislature has exclusive authority to regulate the compound interest charged by an exempt lender, this power does not include authority over procedural requirements, such as the disclosure requirement.  Because the Initiative "merely imposes a procedural threshold of disclosure and consent," it does not conflict with the legislature's power to govern the amount of compound interest a lender can charge, and therefore remains in effect under *Penziner*.

Four federal district courts have addressed the issues raised in this certification order, reaching different conclusions.  In this case, the district court held that exempt lenders are subject to the compound interest disclosure requirement.  In contrast, three other district courts in the Ninth Circuit have held that exempt lenders are not subject to the Initiative's disclosure requirement.  *See Washburn v. Prudential Ins. Co. of Am.*, 158 F. Supp. 3d 888, 896 (N.D. Cal. 2015) (recognizing that the power to "in any manner fix, regulate or limit" the charges of exempt lenders includes regulation of compound interest, and holding the Initiative is superseded by Article XV); *Martin v. Metro. Life Ins. Co.*,

179 F. Supp. 3d 948, 954–55 (N.D. Cal. 2016) (reasoning that because "[c]ompound interest is a tool lenders may employ to circumvent the interest rate cap," the legislature's authority "to regulate such charges places compound interest within the legislature's ambit"); *Lujan v. New York Life Ins. Co.*, No. 16-CV-00913-JSW, 2016 WL 4483870, at *5 (N.D. Cal. Aug. 9, 2016) (same).

These cases illustrate that both Northwestern Mutual's and Wishnev's arguments find support in the case law and language of the Initiative.  Moreover, the division among the district courts shows that the lack of clarity is causing confusion.  We therefore need guidance from the California Supreme Court to determine whether Northwestern Mutual is subject to the Initiative's compound interest disclosure requirement.

IV

If the California Supreme Court determines that exempt lenders are subject to the Initiative's disclosure requirement, a second unsettled question arises: Did the procedures in this case satisfy that requirement?

The Initiative provides that "interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith."  Cal. Civ. Code § 1916-2.  Under California insurance law, the "entire contract" includes the life insurance policy and any "application" if the application is "indorsed upon or attached to the policy."  Cal. Ins. Code § 10113.  The California Supreme Court has not determined whether a

signature on an application for insurance, when later attached to the full insurance policy, satisfies section 1916-2.

The California Supreme Court has twice addressed whether a lender's document satisfies the Initiative's disclosure requirement—that "an agreement" stating the lender may charge compound interest "is clearly expressed in writing and signed by the party to be charged therewith." *See McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 21 Cal. 3d 365 (1978) (*McConnell I*); *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 33 Cal. 3d 816 (1983) (*McConnell II*). In *McConnell I*, an agreement between borrower and lender stated that interest would be charged in the broker's "usual custom." 21 Cal. 3d at 370. The Court held that "the customer's agreement on its face does not clearly express an understanding that interest would be compounded," and therefore did not satisfy the Initiative's requirement that "the parties 'clearly expressed in writing' that defendant could charge compound interest." *Id.* at 375. In *McConnell II*, the same brokerage house asserted that it complied with the Initiative's requirement by sending monthly statements that "assertedly provided notice to [its customers] that compound interest was being charged on their accounts." 33 Cal. 3d at 823. *McConnell II* explained that these follow-up monthly statements "would not satisfy the unequivocal requirement of [the Initiative] that the borrower must agree in writing to pay compound interest." *Id.* Because "the documents relied on by defendant as providing notice to its customers do not satisfy the precise requirements" of the Initiative, the Court determined it was irrelevant whether the customers understood that the lender intended to charge compound interest. *Id.* Neither of these cases, however, considered whether a signed application for insurance, together with an insurance policy that clearly sets

forth the lender's intent to compound interest, constitutes an "agreement" that satisfies the requirement of the Initiative.

Northwestern Mutual argues that *McConnell I* and *II* do not provide guidance in this case, and instead we should rely on section 10113 of the California Insurance Code, which provides that an application attached to a policy shall be deemed to "constitute the entire contract between the parties." Northwestern Mutual argues that the policy and the application together are one agreement, that Wishnev signed the agreement by signing the application, and that the agreement clearly states compound interest will be charged through language in the policy. Therefore, Northwestern Mutual asserts it complied with the plain language of the Initiative and California contract law, because the Initiative does not require disclosure "on the actual document signed by the borrower," only that the "agreement" be signed and disclose sufficient information. *See Lujan*, 2016 WL 4483870, at *7.

Wishnev, by contrast, argues that the purpose of the Initiative's requirement is to ensure that a borrower knows of the lender's intent to charge compound interest before entering into an agreement with the lender, and this knowledge can be demonstrated only by signing the paper that actually contains those terms. Because the application did not contain the compound interest terms, and Wishnev signed only the application, the fact that Northwestern Mutual subsequently provided an unsigned policy does not satisfy the Initiative's requirements any more than the subsequently provided monthly statements in *McConnell II*.

The district court here agreed with Wishnev. It read *McConnell II* as requiring a signature on the paper disclosing

the lender's intent to assess compound interest, and held Northwestern Mutual failed to comply with this requirement. Other district courts have rejected this reading of *McConnell II* and concluded that the insurance policy and the application constitute an agreement for purposes of the Initiative's requirements. *See Martin*, 179 F. Supp. 3d at 957; *Lujan*, 2016 WL 4483870, at *6–7.

Resolution of both questions is essential to the more than 300 California insurers and millions of policyholders who have outstanding policy loans. Currently, the conflicting interpretations of state law create uncertainty around policy loans. Moreover, the Association of California Life and Health Insurance Companies claims that if insurers are subject to the Initiative's disclosure requirement, and that requirement is not satisfied by the steps taken here, compliance would require an "overhaul of insurers' business processes." An authoritative interpretation of the California Constitution, the Initiative, and, if necessary, California contract law is needed to give insurance companies guidance on these critical issues of policy loan formation.

V

The Clerk of Court is hereby directed to transmit forthwith to the California Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record pursuant to California Rule of Court 8.548. Submission of this case is withdrawn, and the case will be resubmitted following receipt of the California Supreme Court's opinion on the certified questions or notification that it declines to answer the certified questions. The Clerk shall administratively close this docket pending a ruling by the

California Supreme Court regarding the certified questions. The panel shall retain jurisdiction over further proceedings in this court. The parties shall notify the Clerk of this court within one week after the California Supreme Court accepts or rejects certification. In the event the California Supreme Court grants certification, the parties shall notify the Clerk within one week after the Court renders its opinion.

**CERTIFICATION REQUESTED; SUBMISSION VACATED.**

## Appendix A

### The 1918 Initiative: Cal. Civ. Code §§ 1916-1–5

1916-1    The rate of interest upon the loan or forbearance of any money, goods or things in action or on accounts after demand or judgments rendered in any court of this state, shall be seven dollars upon the one hundred dollars for one year and at that rate for a greater or less sum or for a longer or a shorter time; but it shall be competent for parties to contract for the payment and receipt of a rate of interest not exceeding twelve dollars on the one hundred dollars for one year and not exceeding that rate for a greater or less sum or for a longer or shorter time, in which case such rate exceeding seven dollars on one hundred dollars shall be clearly expressed in writing.

1916-2    No person, company, association or corporation shall directly or indirectly take or receive in money, goods or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods or things in action than at the rate of twelve dollars upon one hundred dollars for one year; and in the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith. Any agreement or contract of any nature in conflict with the provisions of this

section shall be null and void as to any agreement or stipulation therein contained to pay interest and no action at law to recover interest in any sum shall be maintained and the debt can not be declared due until the full period of time it was contracted for has elapsed.

1916-3     (a) Every person, company, association or corporation, who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections, one and two, may either in person or his or its personal representative, recover in an action at law against the person, company, association or corporation who shall have taken or received the same, or his or its personal representative, treble the amount of the money so paid or value delivered in violation of said sections, providing such action shall be brought within one year after such payment or delivery.

(b) Any person who willfully makes or negotiates, for himself or another, a loan of money, credit, goods, or things in action, and who directly or indirectly charges, contracts for, or receives with respect to any such loan any interest or charge of any nature, the value of which is in excess of that allowed by law, is guilty of loan-sharking, a felony, and is punishable by imprisonment in the state prison for not more than five years or in the county jail for not more than one year.  This subdivision shall not apply to any person licensed to make or negotiate, for himself or another, loans

of money, credit, goods, or things in action, or expressly exempted from compliance by the laws of this state with respect to such licensure or interest or other charge, or to any agent or employee of such person when acting within the scope of his agency or employment.

1916-4    Sections one thousand nine hundred seventeen, one thousand nine hundred eighteen, one thousand nine hundred nineteen and one thousand nine hundred twenty of the Civil Code and all acts and parts of acts in conflict with this act are hereby repealed.

1916-5    This act whenever cited, referred to, or amended may be designated simply as the "usury law."

Appendix B

**Cal. Const. art. XV, § 1**

§ 1. Interest rates

The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest:

(1) For any loan or forbearance of any money, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, at a rate not exceeding 10 percent per annum; provided, however, that any loan or forbearance of any money, goods or things in action the proceeds of which are used primarily for the purchase, construction or improvement of real property shall not be deemed to be a use primarily for personal, family or household purposes; or

(2) For any loan or forbearance of any money, goods, or things in action for any use other than specified in paragraph (1), at a rate not exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act as now in

effect or hereafter from time to time amended (or if there is no such single determinable rate of advances, the closest counterpart of such rate as shall be designated by the Superintendent of Banks of the State of California unless some other person or agency is delegated such authority by the Legislature).

No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.

However, none of the above restrictions shall apply to any obligations of, loans made by, or forbearances of, [list of exempt lenders] or any other class of persons authorized by statute, or to any successor in interest to any loan or forbearance exempted under this article, nor shall any such charge of any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting or as connected with the rate of interest hereinbefore fixed. The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonuses, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action.

The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and

based upon interest rates charged by federal agencies or economic indicators, or both.

In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum.

The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith.